# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| Ekoko K. Avoki; Francisco K. Avoki, | C/A No. 0:17-1141-DCC-PJG |
| Plaintiffs, | |
| v. | **ORDER AND** |
| | **REPORT AND RECOMMENDATION** |
| City of Chester, South Carolina; Police of Chester, South Carolina; PTL Covington; Doe I-XXX, | |
| Defendants. | |

The self-represented plaintiffs, Ekoko K. Avoki and Francisco K. Avoki, filed this civil rights action *in forma pauperis* under 28 U.S.C. § 1915. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the parties' cross motions for summary judgment. (ECF Nos. 304, 327.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the Avokis of the summary judgment and dismissal procedures and the possible consequences if they failed to respond adequately to the defendants' motion. (ECF No. 306.) The parties each filed a response in opposition to the motions (ECF Nos. 313, 334), and a reply (ECF Nos. 318, 336). Additionally, the court directed the parties to brief the issue of whether the court should stay or hold in abeyance the parties' motions as to the plaintiffs' Fourth Amendment claims. (See ECF Nos. 340, 349, 354.) Having reviewed the record presented and the applicable law, the court finds that the Avokis' motion for summary judgment should be denied in part and the defendants' motion for summary judgment be granted in part. The

court also finds the parties' motions should be held in abeyance as to the plaintiffs' Fourth Amendment and retaliation claims.[1]

**BACKGROUND**

The following facts are either undisputed, or are taken in the light most favorable to the non-moving party to the extent they find support in the record. The Avokis, a married couple, formerly resided in an owner-occupied house with their five children in Chester, South Carolina. (Pl.'s Mot. Summ. J., ECF No. 327 at 2.) This dispute arises out of the sale of the Avokis' house by the City of Chester at public auction, during which the Avokis claim the City violated their right to due process by failing to give them sufficient notice of the sale. (1st Am. Compl. ¶¶ 19-25, ECF No. 10 at 8-9.)[2] In 2014 or 2015, the Avokis and the City of Chester disagreed over the proper valuation of the Avokis' house for property tax purposes. (Id. ¶¶ 18-19, ECF No. 10 at 7-8.) At some point, the City of Chester determined that the Avokis were delinquent in paying their property taxes. On July 10, 2015, the City of Chester sent Francisco Avoki notice that the property would be sold at a public auction on November 10, 2015 if the delinquent taxes were not paid by August 28, 2015. (Defs.' Mot. Summ. J., Watkins Aff. ¶¶ 3-4, ECF No. 304-2 at 1-2; Ex. A, ECF No. 304-3 at 2.) The notice was sent through the United States Postal Service via certified mail with delivery restricted

---

[1] The defendants note that the City of Chester Police Department is not a separate entity subject to suit from the City of Chester. The court agrees. The Clerk of Court is directed to terminate the "Police of Chester, South Carolina" as a named defendant in this action. The court also notes that Defendant Tyler Covington is misidentified in the caption of this case as "PTL Covington." The Clerk of Court is directed to change the name of Defendant "PTL Covington" to "Tyler Covington" on the docket.

[2] The operative complaint in this case is the plaintiffs' Second Amended Complaint. (ECF No. 53.) However, that pleading incorporates by reference the plaintiffs' First Amended Complaint. (ECF No. 10.)



to the addressee, Francisco Avoki. (Defs.' Mot. Summ. J., Ex. A., ECF No. 304-3 at 2.) The receipt for the notice indicates that the notice was received and signed for by Francisco Avoki. (Id.) The City also advertised the tax sale of the Avokis' property in a local newspaper twice in October. (Pls.' Resp. Opp'n Summ. J., F. Avoki Aff. ¶ 2, ECF No. 313-1 at 40.)

On December 15, 2015, the Avokis' property was sold at public auction to Kenneth Marsh for $1,031.36.[3] (Defs.' Mot. Summ. J., Watkins Aff. ¶ 6, ECF No. 304-2 at 2; Ex. C., ECF No. 304-5 at 2.) The City of Chester deeded the property to Marsh on April 15, 2016. (Pls.' Resp. Opp'n Summ. J., Exs. 3(a) & 3(c), ECF No. 313-1 at 32, 36-38.) The Avokis bought the property back from Marsh on July 20, 2016.[4] (Id., Ex 3(b), ECF No. 313-1 at 34-35.)

The Avokis filed this lawsuit on May 2, 2017. By order dated November 20, 2017, the court construed the Second Amended Complaint as asserting claims pursuant to 42 U.S.C. § 1983 for denial of due process in violation of the Fourteenth Amendment, false arrest and illegal search and seizure in violation of the Fourth Amendment, and retaliation.[5]

---

[3] The Avokis alleged in their pleading that Marsh bought the property at public auction for $850. (1st Am. Compl. ¶¶ 20-21, ECF No. 10 at 8.)

[4] In the pleadings, the Avokis claim they paid Marsh $6,000 to buy the property. (1st Am. Compl. ¶ 21, ECF No. 10 at 8.) However, the plaintiffs provided a quitclaim deed in response to the defendants' motion for summary judgment showing that Marsh sold the property back to the Avokis for $1. (Pls.' Resp. Opp'n Summ. J., Ex. 3(b), ECF No. 313-1 at 34.)

[5] The Avokis' claims for false arrest, illegal search and seizure, and retaliation relate to a separate claim raised in the pleadings against the City of Chester and Tyler Covington regarding Ekoko Avoki's traffic citation for driving without insurance. As explained below, the court will not address the merits of those claims at this time.



## DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see,

e.g., Erickson v. Pardus, 551 U.S. 89 (2007), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

B.  Motions for Summary Judgment

   1.  Fourteenth Amendment Claim

The parties both move for summary judgment as to the Avokis' claim pursuant to 42 U.S.C. § 1983 that the City of Chester violated their right to due process by failing to provide them with sufficient notice of the tax sale. As explained below, the court concludes that summary judgment should be granted in favor of the City of Chester as to this claim.

A legal action under 42 U.S.C. § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause provides two areas of constitutional protection—procedural due process and substantive due process. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). Based on their briefing, the



parties appear to agree that the Avokis' claim concerns procedural due process because the issue here is whether the Avokis were given sufficient notice of the tax sale. See Snider Intern. Corp. v. Town of Forest Heights, Md., 739 F.3d 140, 146 (4th Cir. 2014) ("[P]rocedural due process requires fair notice of impending state action and an opportunity to be heard.") (citing Mathews v. Eldridge, 424 U.S. 319, 333 (1976)).[6] The parties also appear to agree that the Avokis have a cognizable interest under South Carolina law in their right to notice of a tax sale of their property.

To comport with the Due Process Clause, the state must give adequate notice of an impending deprivation of private property, and an opportunity to be heard. See Dusenbery v. United States, 534 U.S. 161, 167 (2002); see also Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). "[R]easonable efforts designed to 'actually inform' a party with a property interest of possible deprivation of that interest remain the touchstone of constitutionally adequate notice." Plemons v. Gale, 396 F.3d 569, 573 (4th Cir. 2005) (quoting Mullane, 339 U.S. at 315.) Thus, although the Constitution does not always require actual receipt of notice, it does always require efforts 'reasonably calculated under all the circumstances to apprise' a party 'of the pendency' of the deprivation of property." Id. (quoting Dusenbery, 534 U.S. at 168-171.)

Here, the defendants argue that it is undisputed that Francisco Avoki received actual notice of the pending tax sale, and therefore, the Avokis' claim that they were denied due process must fail as a matter of law. The court agrees.

The defendants have submitted a sworn affidavit from the City of Chester's Accounts Payable Clerk, Deborah Ann Watkins. Watkins swears that on July 10, 2015, the City of Chester

---

[6] On the other hand, substantive due process "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" Zinermon v. Burch, 494 U.S. 113, 125 (1990) (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)).



sent Francisco Avoki notice that the property would be sold at a public auction on November 10, 2015 if the delinquent taxes were not paid by August 28, 2015. (Defs.' Mot. Summ. J., Watkins Aff. ¶¶ 3-4, ECF No. 304-2 at 1-2.) Watkins swears that the notice was sent through the United States Postal Service via certified mail with delivery restricted to the addressee, Francisco Avoki, and she submitted the return receipt as an attachment to her affidavit. (Id., Ex. A., ECF No. 304-3 at 2.) The receipt for the notice shows that the notice was received and signed for by Francisco Avoki. (Id.)

The Avokis appear to admit that they received the mailed notice, and now argue that the City failed to post the notice on the property itself, and failed to properly provide notice by publication in the local newspaper.[7][8] (Pls.' Mot. Summ. J., ECF No. 327 at 14; Pls.' Resp. Opp'n Summ. J., F. Avoki Aff. ¶ 2, ECF No. 313-1 at 40.) However, the undisputed evidence that Francisco Avoki received actual notice of the tax sale bars any claim that the City's notice failed to comport with the Due Process Clause. See Oneida Indian Nation of N.Y. v. Madison Cty., 665 F.3d 408, 429 (2d Cir. 2011) ("[A]lthough due process does not require actual notice, actual notice satisfies due process—so long as that notice apprises a party of the pendency of the action and affords it an opportunity to respond.") (internal citations and alterations omitted).

---

[7] There appears to be a factual dispute about whether the City published notice of the sale in the local newspaper three consecutive weeks as required by state law (S.C. Code Ann. § 12-51-40(d)), or whether the notice ran for only two weeks. (Compare Defs.' Mot. Summ. J., Watkins Aff. ¶ 5, ECF No. 304-2 at 2; Ex. B, ECF No. 304-4 at 2-3; with Pls.' Resp. Opp'n Summ. J., F. Avoki Aff. ¶ 2, ECF No. 313-1 at 40.)

[8] The Avokis filed a "motion in limine" to exclude any consideration of the return receipt at trial or on summary judgment, arguing that because the City purportedly failed to properly provide notice of the tax sale by publication, it would be prejudicial to the Avokis to allow the City to not comply with the statute requiring publication. (ECF No. 294.) The motion is denied. Whether the City complied with the publication statute has no effect on the authenticity and relevance of the return receipt.

The Avokis also now argue, for the first time on summary judgment, that they failed to receive adequate notice of their *right to redeem* the property pursuant to South Carolina Code Ann. § 12-51-90.[9] First, the court notes that parties may not add new claims on summary judgment. See Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (citing Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004)). However, the defendants do not object to the Avokis' assertion of this claim on summary judgment, and instead have addressed the issue on the merits. (Defs.' Resp. Opp'n Summ. J., ECF No. 334 at 3.) Even liberally construing the pleadings to raise such a claim in light of the Avokis' *pro se* status, the court finds that such a claim would fail here because, as the defendants argue, the Avokis have failed to identify any evidence of any official policy or custom that would establish municipal liability against the City.[10]

Whereas individual capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, official capacity suits are treated as a suit against the municipality. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). In Monell, the United States Supreme Court held that a

---

[9] Section 12-51-90 requires that the defaulting taxpayers be given twelve months after the tax sale to redeem the property by paying the delinquent taxes and costs, at which time the tax sale is cancelled.

[10] The defendants deny that the City failed to follow § 12-51-90, and argue that even if the City did not follow the statute, a violation of state law does not equate to a constitutional violation. The court notes that state law does not define the contours of constitutionally adequate notice under the Due Process Clause, and a violation of state law does not necessarily give rise to a claim pursuant to § 1983. See Snider Intern. Corp. v. Town of Forest Heights, Md., 739 F.3d 140, 145 (4th Cir. 2014).

PJG

municipality or other local governmental entity may be liable under § 1983 for the violation of a plaintiff's constitutional rights "only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" Milligan v. City of Newport News, 743 F.2d 227, 229 (4th Cir. 1984) (quoting Monell, 436 U.S. at 694); see also Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Walker v. Prince George's Cty., 575 F.3d 426, 431 (4th Cir. 2009).

Thus, a plaintiff who seeks to assert a § 1983 claim against a municipality for acts done by a municipal official or employee must show that a municipal policy or custom caused the plaintiff's injury. See Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999) (citing Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994)). However, "municipalities are not liable pursuant to *respondeat superior* principles for all constitutional violations of their employees simply because of the employment relationship." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (citing Monell, 436 U.S. at 692-94). "Instead, municipal liability results only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987) (quoting Monell, 436 U.S. at 694). "Because municipal liability results only when the municipality itself can be directly charged with fault for a constitutional violation, it results only when policy or custom as above defined is (1) fairly attributable to the municipality as its own, and is (2) the moving force behind the particular constitutional violation." Id. at 1386-87 (internal quotation marks and citations omitted).

PJG

Here, even assuming the Avokis could show that the City of Chester failed to give them constitutionally adequate notice of the redemption period,[11] the Avokis fail to forecast any evidence that could establish municipal liability. The Avokis fail to identify any policy of the City that would have caused them to not receive adequate notice of the redemption period. See Spell, 824 F.2d at 1386 (" 'Policy' in this context implies most obviously and narrowly a 'course of action consciously chosen from among various alternatives' respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government.") (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)). The Avokis alleged in the pleadings that the City of Chester "often and in harmony or connivance" with Kenneth Marsh sold properties in tax sales to Marsh for little money so that Marsh could demand payment from the delinquent taxpayers to buy their property back. Such an arrangement could arguably constitute a "custom." (1st Am. Compl. ¶ 21, ECF No. 10 at 8.) But the Avokis fail to identify any evidence that would support the allegation that the City and Marsh work in concert, and this case is the only instance the Avokis have identified of Marsh buying property for the purpose of selling it back to a delinquent taxpayer. See Spell, 824 F.2d at 1386 (stating that municipal liability will not attach unless the custom or usage is a "persistent and widespread" practice of municipal officials "so permanent and well-settled as to have the force of law") (citing Monell, 436 at 691). Nor would such an allegation, even if true, constitute evidence of a municipal custom of failing to provide adequate notice to defaulting

---

[11] Other courts have recognized that state law can create a cognizable interest in notice of the right to redeem one's former property after a tax sale. See, e.g., Plemons, 396 F.3d at 572-76 (reviewing West Virginia's redemption scheme); Onieda Indian Nation, 665 F.3d at 428 (New York). There does not appear to be any evidence in the record addressing this allegation, nor have the parties provided any argument as to whether South Carolina's redemption scheme creates such an interest.

PJG

taxpayers of the redemption period. Thus, the Avokis have failed to identify any evidence from which a reasonable jury could find that the City of Chester had an official policy or custom that caused the Avokis to receive inadequate notice of the redemption period.

### 2. Fourth Amendment and Retaliation Claims

The Avokis' claims for false arrest, illegal search and seizure, and retaliation relate to a separate claim raised in the pleadings against the City of Chester and Tyler Covington regarding Ekoko Avoki's traffic citation for driving without insurance. The defendants submitted an affidavit by Covington that asserts that Ekoko's citation for driving without insurance is still pending in the City of Chester Municipal Court. (Defs.' Mot. Summ. J., Covington Aff. ¶ 13, ECF No. 304-6 at 3.) In light of this fact, the court ordered the parties to brief the issue of whether the court should stay or hold in abeyance the parties' motions for summary judgment as to the Avokis' Fourth Amendment claims. (ECF No. 340.)

Where a plaintiff files a false arrest claim in federal court before she is tried on pending state charges, abstention principles dictate that the federal civil action should be stayed until the underlying criminal charges are resolved. Wallace v. Kato, 549 U.S. 384, 393-94 (2007) ("If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.") (citing Heck v. Humphrey, 512 U.S. 477, 487-88 n.8 (1994)); see, e.g., Cohen v. Rosenstein, 610 F. App'x 240 (4th Cir. 2015). Accordingly,

PJG

Wallace[12] dictates that the Avokis' Fourth Amendment claim be stayed pending the "ultimate termination of the state prosecution, including any relevant state collateral review proceedings, whether by adjudication on the merits or by a decision of the state at any point to abandon or forego the prosecution." Hammond v. Fernandes, C/A No. 2:12-1128-MGL-BHH, 2012 WL 3717184, at *6 (D.S.C. July 18, 2012) (quoting Traverso v. Penn, 874 F.2d 209, 213 (4th Cir. 1989) and collecting cases staying § 1983 actions pending the resolution of underlying state criminal charges), report and recommendation adopted by 2012 WL 3716432 (D.S.C. Aug. 28, 2012).

Francisco Avoki argues *his* claim that Covington's presence inside the "curtilage" of his property violated the Fourth Amendment should not be stayed because it does not depend on the resolution of Ekoko Avoki's pending state criminal charge. (Pls.'s Brief, ECF No. 354 at 14.) Assuming without deciding the cognizability of Francisco Avoki's claim, such a claim would require the resolution of issues of fact and law that determine the reasonableness of Covington's actions under the Fourth Amendment. Those same issues will require resolution in Ekoko Avoki's state case too, and therefore, the court will abstain from addressing them at this time.

---

[12] The defendants give great attention to the Younger abstention doctrine in their briefs on this issue, but Younger does not supply the rule here. See Younger v. Harris, 401 U.S. 37, 41 (1971) (barring *equitable* interference in ongoing state criminal proceedings except in narrow circumstances); see also Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 78 (2013); Jones v. Cty. of Westchester, 678 F. App'x 48, 50 (2d Cir. 2017) ("The Supreme Court has noted that 'the extent to which the Younger doctrine applies to a federal action seeking only monetary relief' is an open question.") (quoting Deakins v. Monaghan, 484 U.S. 193, 202 (2002)); and Heck, 512 U.S. at 487 n.8 (noting that where a state criminal defendant brings a federal lawsuit during the pendency of his criminal trial, abstention may be appropriate under Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976)).

*PJG*

**RECOMMENDATION**

Based on the foregoing, as to the Avokis' Fourteenth Amendment claim, the court recommends the Avokis' motion for summary judgment be denied (ECF No. 327), and the defendants' motion for summary judgment be granted (ECF No. 304). As to the Avokis' Fourth Amendment and retaliation claims, the court recommends the claims be stayed pending the ultimate termination of the state prosecution, including any relevant state collateral review proceedings, whether by adjudication on the merits or by a decision of the state at any point to abandon or forego the prosecution.[13] [14]

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 27, 2019
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[13] Additionally, the Avokis must file a motion asking the court to lift the stay within twenty-one days of the conclusion of Ekoko Avoki's state criminal proceeding. However, if Ekoko Avoki's state criminal proceeding has not concluded by March 1, 2020, the Avokis must file a status report by March 8, 2020 detailing the activity in that case since the date of this Report and Recommendation. Failure to file a status report on March 8, 2020 may result in sanctions, including dismissal for failure to prosecute.

[14] In light of the court's recommendation, the following motions should be terminated as moot: ECF No. 319 & ECF No. 338.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).